UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

**Hearing Date: March 16, 2016**
**Hearing Time: 10:00 a.m.**

In re:                                                          Chapter 11

HANNAH FISCHER,                                                 Case No. 15-23687 (RDD)

                                     Debtor.

PLEASE TAKE NOTICE that upon this Notice of Motion and the accompanying motion

and the declaration of Susan A. Arbeit, Esq., the United States Trustee for Region 2 (the "United

States Trustee") will move this Court before the Honorable Robert D. Drain, Bankruptcy Judge,

in the United States Bankruptcy Court, 300 Quarropas Street, White Plains, New York, on March

16, 2016 at 10:00 a.m., or as soon thereafter as counsel can be heard, for an order directing the

appointment of a chapter 11 trustee, and for such other further relief as this Court may deem just

and proper.

PLEASE TAKE FURTHER NOTICE that any responsive papers should be filed with the

Court and personally served on the United States Trustee, at 201 Varick Street, Room 1006, New

York, New York 10014, to the attention of Susan A. Arbeit, Esq., no later than seven (7) days

prior to the return date set forth above. Such papers shall conform to the Federal Rules of Civil

Procedure and identify the party on whose behalf the papers are submitted, the nature of the

response, and the basis for such response.

Dated:  New York, New York
        February 22, 2016

                              WILLIAM K. HARRINGTON
                              UNITED STATES TRUSTEE

                    By:    /s/ *Susan A. Arbeit*
                           Susan A. Arbeit
                           Trial Attorney
                           201 Varick Street, Room 1006
                           New York, New York  10014
                           Tel. No. (212) 510-0500

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X
                                                  :
In re                                             :         Chapter 11
                                                  :
Hannah Fischer,                                   :         Case No. 15-23687 (RDD)
                                                  :
                              Debtor.             :
                                                  :
-----------------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF THE UNITED STATES TRUSTEE'S MOTION FOR AN ORDER DIRECTING THE <u>APPOINTMENT OF A CHAPTER 11 TRUSTEE</u>

# TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

I.      PRELIMINARY STATEMENT ................................................................................2

II.     FACTUAL BACKGROUND.....................................................................................3
A.      General…………………………………………………………………… 3
B.      Debtor's Assets and Liabilities.......................................................................4
C.      The Fromen and Rubenstein State Litigation and the Fromen State Litigation .................5
D.      Debtor's Record Keeping System ..................................................................6
E.      Debtor's Business Transactions .....................................................................9

III.    DISCUSSION ..........................................................................................................13
A.      The Appointment of a Trustee is Required Upon Finding of Cause,
        or Where it is in the Best Intersest of Creditors............................................13
B.      Cause Exists to Appoint a Chapter 11 Trustee Pursuant to Section 1104(a)(1) ...............14
C.      The Appointment of a Chapter 11 Trustee Is in the Best Interests
        of Creditors Pursuant to Section 1104(a)(2) .................................................19

IV.     CONCLUSION.........................................................................................................20

i

# TABLE OF AUTHORITIES

**Cases**

In re The 1031 Tax Group, LLC, 374 B.R. 78, 87 (Bankr. S.D.N.Y. 2007)……………………13

In re Oklahoma Refining Co. v. Blaik (In re Oklahoma Refining Co.),
838 F.2d 1133, 1136 (10th Cir.1988)  ……………………………………………………14

In re Altman, 230 B.R. 6, 16 (Bankr. D. Conn. 1999), aff'd in part, vacated in part,
254 B.R. 509 (D. Conn. 2000) …………………………………………………….………14

In re Ashley River Consulting, 2015 WL 1540941 at *9 …………………………………...14,18

In re: Soundview Elite, Ltd., 503 B.R. 571, 581-82 (Bankr. S.D.N.Y. 2014)………………..14

In re Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 355 (1985) …………15

In re Allison v. Clos-ette Too, No. 13 Civ 1618, 2014 WL 4996358,
*5 (S.D.N.Y. Sept. 15, 2014)………………………………………………………………… 16

In re Bridgestone/Firestone v. Recovery Credit Serv., 98 F.3d 13, 18 (2d Cir. 1996)………… .16

In re Sharon Steel Corp., 871 F.2d 1217, 1226 (3d Cir. 1989)…………………………………19

In re Ionosphere Clubs, Inc., 113 B.R. 164, 168 (Bankr. S.D.N.Y. 1990)………………………19

In re Taub, 427 B.R. 208, 227 (Bankr. E.D.N.Y. 2010)…………………………………………...19

In re Euro-American Lodging Corp., 365 B.R. 421, 427 (Bankr. S.D.N.Y. 2007)……………...19

**Statutes**

11 U.S.C. § 1104(a) ........................................................................................................2, 13, 14

11 U.S.C. § 1104(a)(1)..........................................................................................2, 13, 14, 15, 18

11 U.S.C. § 1104(a)(2)..........................................................................................2, 13, 19, 20

11 U.S.C. § 1104(e) ........................................................................................................13

28 U.S.C. § 586(a)(3)........................................................................................................2

28 U.S.C. § 586(a)(5)........................................................................................................2

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

William K. Harrington, the United States Trustee for Region 2 (the "United States Trustee"), in furtherance of his duties and responsibilities set forth in 28 U.S.C. §586(a)(3) and (5), moves this Court for an order, pursuant to 11 U.S.C. §1104(a), appointing a chapter 11 trustee (the "Motion"). In support of this Motion, the United States Trustee respectfully states as follows:

## I. PRELIMINARY STATEMENT

The United States Trustee moves for the appointment of a chapter 11 trustee pursuant to sections 1104(a)(1)&(2) of the Bankruptcy Code. Appointment of a chapter 11 trustee is appropriate either for cause or in the best interest of creditors. As discussed below, on February 5, 2016, the United States Trustee filed a motion (the "Challah Fairy Trustee Motion") for an order directing the appointment of a trustee for an affiliated debtor, The Challah Fairy, Inc. (the "Challah Fairy"). In that motion, the United States Trustee alleged that Hannah Fischer had been incompetently or grossly mismanaging the Challah Fairy, a business solely owned by Ms. Fischer.  The United States Trustee has since determined that it is crucial for a chapter 11 trustee to be appointed in the instant case to manage all of Ms. Fischer's business affairs. In addition to her incompetent and/or gross mismanagement of the Challah Fairy, the Debtor is at best, uninformed about her other business ownership interests and has failed to disclose assets which appear to have substantial value on her bankruptcy petition and schedules. Without an independent fiduciary to manage all of the Ms. Fischer's business interests, assets may dissipate causing harm to her creditors.

2

## II. FACTUAL BACKGROUND

### A.    General Background

1.      On November 23, 2015 (the "Petition Date"), Hannah Fischer a/k/a Hannah Schlisser (the "Debtor") filed a voluntary petition (the "Petition") for relief under chapter 11, title 11, United States Code (the "Bankruptcy Code"). ECF Doc. No. 1.

2.      On the Petition Date, the Challah Fairy filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. See Case No. 15-23686, ECF Doc. 1. The Challah Fairy's petition was signed by the Debtor, who is the president and sole shareholder of the Challah Fairy. See Case No. 15-23686, ECF Doc. Nos. 1 and 2 at ¶1.

3.      The Challah Fairy is a challah baking business and full-service café located at 170 North Main Street, New City, New York 10956 (the "Store Location"). See Case No. 15-23686, ECF Doc. No. 18, Exhibit A at 5:5-6; 8:7-10. In addition to the sales made at the Store Location, the Debtor sells challahs throughout the Tri-State area to boutique and kosher supermarkets, schools, and two private individuals (collectively, the "Debtor's Wholesale Customers"). Id. at 8:11-35; 9:1-2. All baking is done on premises at the Store Location. Id. at 12:3-4.

4.      The Store Location is owned by 170 North Main LLC (the "Landlord"). See Case No. 15-23686, ECF Doc. No. 9 at 10. On November 30, 2015, the Challah Fairy's lease on the Store Location expired by its terms. See Case No. 15-23686, ECF Doc. No. 18, Exhibit A at 11:8-10. On information and belief, prior to the Petition Date, the Landlord commenced a summary proceeding for past due rent. The Challah Fairy and the Landlord are currently operating under a use and occupancy agreement whereby the Challah Fairy is paying the Landlord a total of $5,000 per month, with either party having a right to terminate by providing seventy-five days' notice. Id. at 11: 3-7, 14-19.

3

5.      According to the Debtor, the Debtor and Michael Schlisser ("Schlisser") live together in a rental property located at 5 Grey Beech Lane, Pomona, New York (the "Pomona Property"). See Case No. 15-23686, ECF Doc. No. 18, Exhibit B at 21:12-25.[1]

6.      On January 6, 2016, the Debtor testified on her own behalf at the meeting of creditors pursuant to section 341(a) of the Bankruptcy Code (the "Debtor's 341 Meeting"). See Declaration of Susan A. Arbeit, dated February 22, 2016, in Support of the United States Trustee's Motion for an Order Directing the Appointment of a Chapter 11 Trustee (the "Arbeit Decl.") at ¶1, which is attached as Exhibit 1 hereto. On that same date, the Debtor also testified on behalf of the Challah Fairy at its meeting of creditors (the "Challah Fairy's 341 Meeting", and collectively with the Debtor's 341 Meeting, the "341 Meetings"). Id.

7.      The United States Trustee has not appointed a trustee, and the Debtor remains in control and possession of its assets as a debtor-in-possession. See Arbeit Decl. at ¶3.

8.      The United States Trustee solicited, but was unable to form an official committee of unsecured creditors. See Arbeit Decl. at ¶4.

9.      As of this date, the Debtor and the Challah Fairy have failed to file any monthly operating reports, and reports for November 2015, December 2015, and January 2016 are currently past due. See Arbeit Decl. at ¶5. The February 2016 monthly operating report is due prior to the return date of this Motion. Id.[2]

**B.      Debtor's Assets and Liabilities**

10.     The Petition lists estimated assets of between $0-$50,000 and estimated liabilities

---

[1] On information and belief, Michael Schlisser was convicted of several federal counts of fraud in the United States District Court for the Southern District of New York in 2003. See 03-00611 (RMB).

[2] As of this date, the Debtor and the Challah Fairy have failed to pay the quarterly fees due, pursuant to section 1930(a) of title 28 of the United States Code. See Arbeit Decl. at ¶6 and ¶7. In addition, no applications to retain counsel have been filed in either the Debtor's or the Challah Fairy's cases.

of between $1,000,001 to $10 million. ECF Doc. No. 1.

11.      Schedule B lists the Debtor's ownership interest in the Challah Fairy and values it at "zero." ECF Doc. No. 11 at 5.

12.      The Challah Fairy's Summary of Schedules states that the Challah Fairy's total assets are $68,680.00. See 15-23686, ECF Doc. No. 9 at 1.

**C.      The Fromen and Rubenstein State Litigation and the Fromen State Litigation**

13.      According to the Debtor's Affidavit under Local Rule 1007-2, the Debtor filed the Petition because she was ordered by the Supreme Court of the State of New York, County of Rockland, in the case styled Rose Fromen and Simi Rubenstein v. Michael Schlisser and Hannah Schlisser, Index No. 35823/2013 (the "Fromen and Rubenstein State Litigation"), to turn over the original stock certificates of the Challah Fairy due to the Debtor's failure to comply with the post judgment enforcement proceedings. See ECF Doc. No. 4 at ¶2; see also, Fromen et al. v. Schlisser et al., Index No. 35823/2013, Docket No. 67. The post judgment enforcement proceedings resulted from the Debtor's failure to pay an obligation on a promissory note that the Debtor alleges she "unwittingly guaranteed" for Schlisser. ECF Doc. No. 4, ¶2.

14.      On March 27, 2014, Ernie Fromen commenced litigation in the Supreme Court of the State of New York, County of Rockland, by filing a complaint against (i) Schlisser, (ii) the Debtor, (iii) the Challah Fairy, (iv) Schick's TCF Food Group, LLC, (v) FNE Solutions, LLC, (vi) PFB Trading, and (vii) TCF Investments LLC for fraud and breach of fiduciary duty. Fromen v. Schlisser et al., Index No. 031461/2014 (the "Fromen State Litigation"); see also, Case No. 15-23686, ECF Doc. No. 18, Exhibit C. Specifically, Mr. Fromen alleged that the Debtor and Schlisser enticed Mr. Fromen to obtain investors for each of the defendant entities above, making false promises that the funds would be used for designated purposes, and then

5

diverted the funds for their own use. Id. at 4, ¶24-25. On June 22, 2015, various intervenors

joined the action against TCF Investments LLC and Schick's TCF Food Group, LLC. Index No.

031461/2014 at Doc. No. 33.

**D.      The Challah Fairy's Record Keeping System**

      **i.      The Debtor's Testimony at the Challah Fairy's 341 Meeting**

15.      Customers at the Store Location can pay for their purchases by cash, credit card,

or check. See Case No. 15-23686, ECF Doc. No. 18, Exhibit A at 24:16-18. Debtor's Wholesale

Customers, on the other hand, can only pay by check. Id. at 27:1-8 Funds received from credit

card purchases are deposited directly into the Challah Fairy's bank account. Id. at 25:5-7.

16.      Sales (cash, credit card, and check) made at the Store Location are recorded in the

Debtor's point-of-sale ("POS") system, which is a computer system that the Challah Fairy

maintains. Id. at 24:4-23.

17.      As more fully described in the Challah Fairy Trustee Motion, incorporated herein

by reference, the Debtor testified that she does not provide the records generated by the POS

system to the Challah Fairy's accountant and instead she approximates on an annual basis the

amount of cash the Store Location collects. See Case No. 15-23686, ECF Doc. No. 18 at ¶17; see

also, Case No. 15-23686, ECF Doc. No. 18, Exhibit A at 25:10-15; 26:9-18.

      **ii.      Deposition Testimony from the Fromen and Rubenstein State Litigation and
the Fromen State Litigation**

18.      On December 22, 2014, a deposition of the Debtor was taken in connection with

the Fromen State Litigation (the "First Fischer Dep."). On February 18, 2015, a deposition of the

Debtor was taken in connection with the Fromen and Rubenstein State Litigation (the "Second

Fischer Dep.," collectively, with the First Fischer Dep., the "Fischer Depositions").

19.      As more fully described in the Challah Fairy Trustee Motion, the Debtor testified

6

at the Second Fischer Dep. that she would make personal deposits into and withdrawals from the Challah Fairy's bank account because she did not have a personal bank account.[3] See Case No. 15-23686, ECF Doc. No. 18 at ¶19; see also, Case No. 15-23686, ECF Doc. No. 18, Exhibit E at 10:23-25; 11:1-5,11-17. The Debtor further testified that she does not have a personal bank account anymore because Citibank blocked her account after she used $4,000.00 in overdraft protection and failed to replenish funds into her account, and that it was inconvenient to open a new account. See Case No. 15-23686, ECF Doc. No. 18, Exhibit E at 10:23-25; 11:1-17.

20.    As more fully described in the Challah Fairy Trustee Motion, the Debtor testified at the Second Fischer Dep. that once a year she would review the Challah Fairy's bank statements and make a determination based on memory of whether deposits were business related. See Case No. 15-23686, ECF Doc. No. 18 at ¶22; see also, Case No. 15-23686, ECF Doc. No. 18, Exhibit E at 11:6-17.

**E.    Business Transactions of the Debtor and/or the Challah Fairy**

**i.    Pomona Property**

21.    As more fully described in the Challah Fairy Trustee Motion, at the 341 Meetings the Debtor testified that the Debtor and Schlisser borrowed $60,000 or $80,000 from undisclosed "people" in February 2015 and funneled the borrowed amount through the Challah Fairy's accounts to enable the Debtor's son to purchase the Pomona Property, a home in which the Debtor and Schlisser currently reside. See Case No. 15-23686, ECF Doc. No. 18 at ¶23; see also, Case No. 15-23686, ECF Doc. No. 18, Exhibit A at 17:16-25, 36:12-25, 37:1-21; Exhibit B at 17:12-25, 18:1-3.

22.    According to Debtor's Schedule J, the Debtor pays $2,000.00 per month in rent to

---

[3] At the Debtor's 341 Meeting, the Debtor confirmed that her personal bank account was inactive. See Case No. 15-23686, ECF Doc. No. 18, Exhibit B at 35:15-16.

Mark Fischer for the Pomona Property. ECF Doc. No. 11 at 20. At the Debtor's 341 meeting, the

Debtor provided the following testimony on the payment arrangement between her and Mark

Fischer:

> Ms. Golden: And who do you rent from?
>
> Ms. Fischer: My son.
>
> Ms. Golden: Is this the house that you –
>
> Ms. Fischer: It is.
>
> Ms. Golden: -- lent him money to purchase?
>
> Ms. Fischer: Correct.
>
> Ms. Golden: Okay. How much do you pay in rent every month?
>
> Ms. Fischer: Up to whatever we can afford. Up to the – the mortgage is 3,500; we pay up to whatever we can afford to pay him.
>
> Ms. Golden: And what does that entail? Is it ever zero? Is it 100 dollars? Is it –
>
> Ms. Fischer: No, it's –
>
> Ms. Golden: --$1,000 dollars?
>
> Ms. Fischer: I –I give him – I give him – I give him money whenever I have available to me to give it to him, and it goes towards wherever we're up to in the rent money.

See Case No. 15-23686, ECF Doc. No. 18, Exhibit B at 20:6-23.

### ii.     TCF Food Group LLC

23.     As of September 21, 2010, the Challah Fairy held a 50% ownership interest in

Schick's TCF Food Group LLC ("Schick's TCF"). See Case No. 15-23686, ECF Doc. No. 18,

Exhibit F at ¶5.

24.     According to the Debtor, Schick's TCF was formed to purchase Schick's, a

bakery located in Brooklyn. See Case No. 15-23686, ECF Doc. No. 18, Exhibit A at 29:1-3;

30:8-11.

25.    On information and belief, Schick's is located at 4710 16th Avenue, Brooklyn

New York. According to Schick's website, Schick's is "one of the oldest and best kosher

bakeries in the United States." See http://www.schicksbakery.com (last visited February 22,

2016).

26.    At the Challah Fairy's 341 Meeting, the Debtor testified that she believes that the

Challah Fairy sold its interest in Schick's TCF two years ago, however, she was not involved in

the transaction and that Schlisser would know the exact date when the Challah Fairy's interest in

Schick's TCF was sold and for how much consideration the Challah Fairy received, if any. See

Case No. 15-23686, ECF Doc. No. 18, Exhibit A at 29:24-25; 30: 2-4, 20-25; 31:6-8.

   **iii.    Taking Food from Store Property for Personal Use**

27.    As more fully described in the Challah Fairy Trustee Motion, the Debtor testified

at the Debtor's 341 Meeting that in addition to her salary, she also takes approximately fifty

dollars of food and baked goods per week from the Challah Fairy. See Case No. 15-23686, ECF

Doc. No. 18 at ¶28, see also, Case No. 15-23686, ECF Doc. No. 18, Exhibit B at 56:16-25; 57:1-

5.

   **iv.    PBF Trading**

28.    At the Challah Fairy's 341 Meeting, the Debtor testified that the Challah Fairy

uses a Chevrolet van owned by PBF, and that the Challah Fairy pays the monthly loan payment

and insurance on PBF's van. See Case No. 15-23686, ECF Doc. No. 18, Exhibit A at 14:17-25;

15:1-5.

29.    As of February 24, 2012, the following individuals held membership interests in

PBF: (1) the Debtor (25%), (2) Phillip Benjamin Fischer (25%), and (3) Ernie Fromen (50%).[4]

<u>See</u> Case No. 15-23686, ECF Doc. No. 18, Exhibit G at ¶5.

30.    According to the Debtor, PBF was set up by Schlisser so that Ms. Fischer's son,

Philip Benjamin Fischer "could start trading." <u>See</u> Case No. 15-23686, ECF Doc. No. 18, Exhibit

D at 26:1-17. The Debtor believes that PBF "bought interest[s] in companies", but that Schlisser

and Ernie Fromen were the ones that made those decisions. <u>Id</u>. at 30:12-22; 31:5-25.

31.    The Debtor currently lists the value of PBF as "zero" on Schedule B of her

personal bankruptcy schedules. ECF Doc. No. 11 at 5. As more fully described in the Challah

Fairy Trustee Motion, the Debtor testified at the Debtor's 341 Meeting that she was merely the

owner of PBF, and that she has no idea about what assets it holds. <u>See</u> Case No. 15-23686, ECF

Doc. No. 18 at ¶ 32; <u>see also</u>, Case No. 15-23686, ECF Doc. No. 18,  Exhibit B at 41:22-25;

42:1-5.

**v.    Schlisser's Involvement with the Challah Fairy**

32.    As more fully described in the Challah Fairy Trustee Motion, the Debtor testified

at the Challah Fairy's 341 meeting that Schlisser assisted the Challah Fairy with raising capital to

start the business and provides funds to the Challah Fairy when the business needs money. <u>See</u>

Case No. 15-23686, ECF Doc. No. 18 at ¶33; <u>see also</u>, Case No. 15-23686, ECF Doc. No. 18,

Exhibit A at 44:10-25; 45:25.

**vi.    The Debtor's Receipt of Funds from "Friends"**

33.    The Debtor testified at the Debtor's 341 Meeting that she and Schiller personally

receive contributions from undisclosed people and that these funds are not included in the

Debtor's income listed on her bankruptcy schedules. <u>See</u> Case No. 15-23686, ECF Doc. No. 18,

---

[4] According to the Debtor, the ownership interests in PBF have not changed since the company was formed. <u>See</u>
Case No. 15-23686, ECF Doc. No. 18, Exhibit D at 27:4-17.

Exhibit B at 47:15-20, 25; 48:3-5, 8-11, 21-25; 49:1-7; 50:1-6, 9, 14-18. The Debtor testified at

the Debtor's 341 Meeting as follows:

> Ms. Fischer: We get money from other places, but not from contribution from my husband.
>
> Mr. Churgin: Where else do you get money?
>
> Ms. Fischer: We have help from friends.
>
> Mr. Churgin: Okay, well who are these friends?
>
> Ms. Fischer: I don't – I don't have names.
> . . .
> Ms. Golden: So I'm going to jump in. This is Susan Golden. So you're testifying that, aside from the income that is on Schedule I, you do receive other monies?
>
> Ms. Fischer: It's assistance – it's assistance, it's not – it's not – it's not part of my income. It's not an income kind of thing.
> …
> Ms. Fischer: It's money that we receive as help for us to – for living; living assistance.
>
> Ms. Golden: From who?
>
> Ms. Fischer: Friends.
> …
> Ms. Golden: Is it the XYZ Community Foundation that gives you money?
>
> Ms. Fischer: It's not from a foundation, it's –
>
> Ms. Golden: It's actual individuals?
>
> Ms. Fischer: Yes.
>
> Ms. Golden: And why can't you say who the individuals are?
>
> Ms. Fischer: It's – because this is not – it's not for other people to know about this. This is we have to be able to live, we have to be able to pay our expenses, and we have to be able to put food on the table; I have children who live with me.
> …
> Ms. Golden: And how much assistance have you received in the past six months?
>
> Ms. Fischer: I can't – I can't give you an exact number.

> Ms. Golden: Was it 1,000 dollars? Was it more than 1,000 dollars?
>
> …
>
> Ms. Fischer: It's been a few thousand dollars.
>
> …
>
> Ms. Golden: Okay, and you're refusing to testify who you ask or have asked?
>
> Mr. Barr: We won't refuse to testify; we'll provide the information in camera to the U.S. Trustee. We don't want it to be a public record.[5]

Id.

### vii.    Other Ownership Interests of the Debtor

34.    As of December 3, 2012, the Debtor owned a 99% interest in TCF Investments LLC ("TCF Investments"). See Case No. 15-23686, ECF Doc. No. 18, Exhibit H at §2.1.

35.    According to Ms. Fischer this was "another company that was set up for investments." See Case No. 15-23686, ECF Doc. No. 18, Exhibit D at 32:7-12.

36.    On information and belief, TCF Investments holds a membership interest in BTH Quitman Hickory LLC ("BTH") and an ownership interest in Grid Softward, LTD.

37.    On information and belief, BTH owns a coal mine in Kentucky.

38.    The Debtor did not include in her Schedules an ownership interest in TCF Investments. ECF Doc. No. 11.

39.    As more fully described in the Challah Fairy Trustee Motion, at the Debtor's 341 Meeting, the Debtor testified that she may have an ownership interest in an entity that holds an ownership interest in a Kentucky coal mine. See Case No. 15-23686, ECF Doc. No. 18 at ¶40, see also, Case No. 15-23686, ECF Doc. No. 18, Exhibit B at 44:2-25; 45:1-3.

### F.    Motion to Appoint a Trustee for the Challah Fairy

40.    On February 5, 2016, the United States Trustee filed the Challah Fairy Trustee Motion. See Case No 15- 23686, ECF Doc. No. 18. The Challah Fairy Trustee Motion is

---

[5] To date, the United States Trustee has not received this information. See Arbeit Decl. at ¶2.

scheduled to be heard on the same date as the instant Motion.

## III.  DISCUSSION

**A.      The Appointment of a Trustee is Required Upon a Finding of Cause, or Where It Is in the Best Interest of Creditors**

Section 1104(a) of the Bankruptcy Code sets forth two separate standards for the court's

determination of the necessity of appointing a chapter 11 trustee. Section 1104(a) provides:

> (a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee –
>
> (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or
>
> (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

11 U.S.C. § 1104(a)(1), (a)(2). Moreover, section 1104(e) of the Bankruptcy Code provides in

pertinent part:

> the United States trustee shall move for the appointment of a trustee under subsection (a) if there are reasonable grounds to suspect that current members of the governing body of the debtor, the debtor's chief executive or chief financial officer, or members of the governing body who selected the debtor's chief executive or chief financial officer, participated in actual fraud, dishonesty or criminal conduct in the management of the debtor.

11 U.S.C. § 1104(e). The United States Trustee "must seek an order requiring appointment of a

chapter 11 trustee whenever the 'reasonable grounds to suspect' standard is met."  In re The

1031 Tax Group, LLC, 374 B.R. 78, 87 (Bankr. S.D.N.Y. 2007) (quoting section 1104(e)).  The

"statutory requirement that the U.S. Trustee bring such a motion [under section 1104(e)] does not

alter the standard for deciding whether to grant the motion. Rather, § 1104(a)(1) & (2), and the

cases interpreting these subsections, continue to control whether a trustee should be appointed."

Id. at 87.

Here, the appointment of a chapter 11 trustee is appropriate under either subsection of

section 1104(a).

**B.      Cause Exists to Appoint a Chapter 11 Trustee Pursuant to Section 1104(a)(1)**

A finding of "cause" under section 1104(a)(1) mandates the appointment of a trustee.

Oklahoma Refining Co. v. Blaik (In re Oklahoma Refining Co.), 838 F.2d 1133, 1136 (10th Cir.

1988). The list of circumstances constituting "cause" for the appointment of a trustee is non-

exclusive. In re Altman, 230 B.R. 6, 16 (Bankr. D. Conn. 1999), aff'd in part, vacated in part,

254 B.R. 509 (D. Conn. 2000). Factors that courts consider under section 1104(a)(1) include:

conflicts of interest, including inappropriate relations between corporate parents and the

subsidiaries; misuse of assets and funds; inadequate record keeping and reporting; various

instances of conduct found to establish fraud or dishonesty; and lack of credibility and creditor

confidence. Altman, 230 B.R. at 16. The "court need not find any of the enumerated wrongs to

find cause for appointing a trustee." Oklahoma Refining, 838 F.2d at 1136.  Instead, a court is

given "wide latitude" to determine whether the challenged conduct rises to the level of "cause."

In re Ashley River Consulting, LLC, Case Nos. 14-13406, 14-13407, 2015 WL 1540941, *10

(Bankr. S.D.N.Y. 2015). In addition, matters of concern that raise suspicions that a debtor's

management has acted fraudulently and that necessitate an investigation can be deemed

sufficient cause to appoint a trustee. In re: Soundview Elite, Ltd., 503 B.R. 571, 581-82 (Bankr.

S.D.N.Y. 2014).

Through section 1104(a)(1), Congress has mandated that a chapter 11 debtor-in-

possession, who acts as a fiduciary of the bankrupt estate, be an honest broker. See Commodity

14

<u>Futures Trading Comm'n v. Weintraub</u>, 471 U.S. 343, 355 (1985) ("[T]he willingness of courts to leave debtors in possession 'is premised upon an assurance that the officers and managing employees can be depended upon to carry out the fiduciary responsibilities of a trustee.'").

### 1.    The Debtor Has Incompetently or Grossly Mismanaged Her Assets

There is cause here to appoint a chapter 11 trustee, pursuant to section 1104(a)(1) of the Bankruptcy Code. In addition to serious questions regarding the actual role Schlisser plays in the management of the Debtor's assets, there is abundant evidence to strongly suggest that the Debtor – at the very least – has incompetently or grossly mismanaged the Challah Fairy. Specifically, an independent fiduciary should be put in place to run the Challah Fairy because the Debtor (a) misuses its corporate assets and does not maintain corporate formalities and (b) does not maintain an adequate record keeping system. In addition, the Debtor is uninformed about her ownership interests, and is seemingly unconcerned that transactions are taking place with no consideration on the ramification to the Challah Fairy and the Debtor's creditors.

a.    *Misuse of Corporate Assets and Failure to Follow Corporate Formalities*

As mentioned above, the Debtor appears to misuse the Challah Fairy's corporate assets and not maintain corporate formalities. At the Challah Fairy's 341 Meeting, the Debtor testified that less than a year before the Petition Date, the Challah Fairy gifted either $60,000 or $80,000 to her son Mark, to enable him to purchase the Pomona Property, where Ms. Fischer and Mr. Schlisser currently reside. <u>See</u> ¶21 above. For some undisclosed reason, these funds, which were loaned or gifted by "outside people", were funneled through the Challah Fairy and then gifted to her son. <u>Id</u>. When questioned, the Debtor testified that she was not aware of any of the specifics of this arrangement or what the financial ramifications are to the Debtor. <u>Id</u>.

Second, the Debtor "takes" approximately fifty dollars a week worth of challah and other

baked goods from the Challah Fairy's business. See ¶27 above. The Debtor provides no explanation as to why she does not pay for these food products. Id.

Third, the Debtor runs her personal finances through the Challah Fairy's bank account. See ¶19 above. The Debtor testified that she does not have a personal bank account and instead mentally keeps track of her deposits into and withdrawals from the Challah Fairy's bank account. See ¶20 above. In addition to this being an improper way to maintain records for a business, as described below, it is inappropriate for management to be intermingling corporate funds with its principal's personal funds. See Allison v. Clos-ette Too, No. 13 Civ 1618, 2014 WL 4996358, *5 (S.D.N.Y. Sept. 15, 2014) (stating that a corporation's veil can be pierced if the corporation does not follow corporate formalities, such as "intermingling of corporate and personal funds"), citing Bridgestone/Firestone v. Recovery Credit Serv., 98 F.3d 13, 18 (2d Cir. 1996). The Debtor's disregard of corporate formalities, because it is inconvenient to open a personal bank account, is another instance of gross mismanagement of the Challah Fairy on the part of the Debtor.

Similarly, the Debtor authorizing the Challah Fairy to use and pay the monthly loans and insurance on PBF's van without any formal agreement in place is not an acceptable business practice, see ¶28 above, yet another example of the Debtor foregoing corporate formalities with respect to the Challah Fairy, and demonstrates the mismanagement.

b.    *Lack of an Adequate Record Keeping System*

As mentioned above, the Debtor does not maintain an adequate record keeping system for the Challah Fairy. The Debtor claims to use the POS system for all sales made at the Store Location, however, the Challah Fairy does not turn over the records from the POS system to its accountant.[6] See ¶17 above. Instead, the Debtor estimates on an annual basis how much cash is

---

[6] The Debtor's claim that she does not provide the POS records to her accountant because these POS records are duplicated elsewhere is incredible. Not only should an accountant be given access to all of its client's financial

received at the Store Location, and once a year goes through the Challah Fairy's bank statements when preparing the Challah Fairy's tax returns to determine which deposits are not business related. Id. This type of record keeping system cannot possibly provide an accurate accounting of the sales made at the Store Location. Because the Debtor clearly does not accurately report the Challah Fairy's income to its accountant, on its face strongly suggests gross mismanagement.

c.    *Uninformed*

On Debtor's 1007-2 Affidavit, the Debtor states that the Petition was filed because she "unwittingly guaranteed" an obligation on behalf of Schlisser. See ¶ 13 above. In response to queries as to why certain investments and income were left out of the Debtor's and the Challah Fairy's Schedules and Statement of Financial Affairs ("SOFA"), the Debtor states that she was unaware that they should have been included or that she should not be required to disclose. See ¶¶33, 38-39 above. These statements coupled with the Debtor's inability to provide information on the various business transactions she was a stakeholder in, suggests that the Debtor is at best, incompetently or mismanaging her assets. Id. at 13, 21, 26, 30,31, 39.

As of September 21, 2010, the Challah Fairy held a 50% ownership interest in Schick's TCF, which acquired Schick's. See ¶23 above. Subsequent to that period, the Challah Fairy sold its interest in Schick's TCF. Id. at 26. However, despite being the only signatory for the Challah Fairy, the Debtor claims she has no idea about the specifics of the transaction such as when it took place and how much consideration the Challah Fairy received, if any. Id. When asked who would know these specifics, the Debtor responded "Michael Schlisser." See Case No 15- 23686, ECF Doc. No. 18 at ¶27.

Likewise, the Debtor could not provide any information on TCF Investments, only that

---

records, but an accountant would certainly be able to review the POS records in conjunction with a review of the Challah Fairy's bank statements to determine how much cash was received by the Challah Fairy and would be able to account for any duplications in the records.

she may have an ownership interest in an entity that owns a Kentucky coal mine. <u>See</u> ¶39 above.

Nor could the Debtor provide any information on why she valued the Challah Fairy and PBF at

"zero" in her Schedules, even though the Challah Fairy's Schedules, which the Debtor signed,

states that the Challah Fairy's total assets are $68,680.00, <u>see</u> Case No 15- 23686, ECF Doc. No.

18, Exhibit A at 35:23-25; 36:1-8, and the Debtor provided testimony that PBF owns a van and

"bought interest[s] in companies." <u>See</u> Case No 15- 23686, ECF Doc. No. 18 at ¶32.

Lastly, the Debtor did not include in her's or the Challah Fairy's SOFAs any funds that

Schlisser or her undisclosed "friends" transferred to the Debtor or the Challah Fairy "when

things were tight." <u>See</u> ¶¶32 and 33 above; <u>see also</u>, <u>See</u> Case No 15- 23686, ECF Doc. No. 18 at

¶33. In fact, the Debtor was unsure how much her husband had contributed to the Challah Fairy

and had no idea where he procured these contributed funds. <u>See</u> Case No 15- 23686, ECF Doc.

No. 18 at ¶33. In addition, the Debtor did not include any intangible property, such as the value

of its recipes (the crux of the business), on the Challah Fairy's Schedule B. <u>Id</u>. at ¶11. To date,

neither the Debtor's nor the Challah Fairy's Schedules or SOFAs have been amended.

The Debtor's common response that she "doesn't know" about the various entities that

she or the Challah Fairy owned, and that she and the Challah Fairy are the owners in name only,

is at best suspect. Her claim of naivety is not good management; instead, it is evidence that the

she has been incompetently or grossly mismanaging her assets. For these reasons, alone, there is

ample "cause" to appoint a chapter 11 trustee under 11 U.S.C. §1104(a)(1).

### 2.     The Debtor is Conflicted from Pursuing Any Claims Against Herself, Mark Fischer, and Schlisser under 11 U.S.C. §1104(a)(1)

Appointment of a chapter 11 trustee is also appropriate under 11 U.S.C. §1104(a)(1)

when conflicts of interest exist such that the debtors' current management cannot maintain their

fiduciary obligations. <u>See</u> <u>Ashley River Consulting</u>, 2015 WL 1540941 at *9. Based on

information and belief, it will be necessary for the Debtor to review and analyze various

questionable transactions and aspects of the Challah Fairy's business, including the Schick's

TCF sale, the gift made to Mark Fischer to purchase the Pomona Property, and the amount of

cash reported to the taxing authorities versus the amount of cash received as set forth in the

Challah Fairy's POS system. However, the Debtor, as sole shareholder and principal of the

Challah Fairy, would not be in a position to enforce any rights and claims that the Challah Fairy

may have against her, her son, or her purported husband. Based on these conflicts of interest, it is

not likely that the Debtor, who is in a position to exercise control over the Challah Fairy, would

act against her own self-interest, and as such, would not likely be able to maintain its fiduciary

obligations.

C.    **The Appointment of a Chapter 11 Trustee Is in the Best Interests of Creditors
      Pursuant to Section 1104(a)(2)**

Section 1104(a)(2) of the Bankruptcy Code allows appointment of a trustee even when no

"cause" exists. See In re Sharon Steel Corp., 871 F.2d 1217, 1226 (3d Cir. 1989); In re

Ionosphere Clubs, Inc., 113 B.R. 164, 168 (Bankr. S.D.N.Y. 1990). Under section 1104(a)(2),

the Court may appoint a trustee, in its discretion, to address the "interests of the creditors, any

equity security holders, and other interests of the estate." 11 U.S.C. § 1104(a)(2). See, e.g.,

Sharon Steel, 871 F.2d at 1226. Courts "eschew rigid absolutes and look to the practical realities

and necessities." See In re Taub, 427 B.R. 208, 227 (Bankr. E.D.N.Y. 2010) (quoting In re

Adelphia Communication Corp., 336 B.R. 610, 658 (Bankr. S.D.N.Y. 2006)); In re Euro-

American Lodging Corp., 365 B.R. 421, 427 (Bankr. S.D.N.Y. 2007).

Here, the Debtor's largest creditors are the plaintiffs in the Fromen and Rubstein State

Litigation and the Fromen State Litigation. ECF Doc. No. 11 at 12,14. The Debtor's bankruptcy

case was filed because the Debtor failed to comply with post judgment enforcement proceedings

19

in the Fromen and Rubstein State Litigation and was ordered to turn over the stock certificates of

the Challah Fairy. See ¶13 above. In addition, in the complaint filed by Mr. Fromen in the

Fromen State Litigation, various causes of action for fraud and breach of fiduciary duty are

claimed. See ¶14 above. The complaint alleges in part, that the Debtor and Schlisser enticed Mr.

Fromen into obtaining investors for the Challah Fairy, Schick's TCF, PBF, and TCF

Investments, promising that the funds would be used for designated purposes, and then diverted

the funds for their own use. Id. This alleged behavior should be investigated and since there is

already ample evidence of the Debtor's mismanagement of her assets and that the Debtor is

conflicted from pursuing any claims against herself, Mark Fischer, Schlisser, and others, it is

clearly in the interest of the Debtor's and the Challah Fairy's creditors for the Court, pursuant to

11 U.S.C. 1104(a)(2), to direct the appointment of a chapter 11 trustee, that is, an effective and

independent fiduciary, to administrator the Debtor's estates.

## IV.   CONCLUSION

WHEREFORE, the United States Trustee requests that the Court enter orders: (i)

directing the appointment of a chapter 11 trustee and (ii) granting him such other and further

legal and equitable relief to which he may be entitled.

Dated: New York, New York
       February 22, 2016                          Respectfully submitted,

                                                  WILLIAM K. HARRINGTON
                                                  UNITED STATES TRUSTEE, REGION 2

                                          By:     /s/ Susan A. Arbeit
                                                  Susan A. Arbeit
                                                  Trial Attorney
                                                  U.S. Department of Justice
                                                  Office of the United States Trustee
                                                  201 Varick Street, Room 1006
                                                  New York, NY 10014
                                                  Tel. (212) 510-0500